E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8916-GHK (AJWx) | Date | July 30, 2015 |
|---|---|---|---|

| Title | *Mary Ann Casorio v. Princess Cruise Lines, Ltd.* |
|---|---|

| **Presiding: The Honorable** | **GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE** |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order Re:** Defendant's Motion to Dismiss First Amended Complaint (Dkt. 29)

This matter is before us on the above-captioned Motion. We have considered the papers filed in support of and opposition to the Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.      Background**

Plaintiff Mary Ann Casorio ("Plaintiff") filed this action against Defendant Princess Cruise Lines, Ltd. ("Defendant") on November 18, 2014. (Dkt. 1.) On March 16, 2015, we dismissed the complaint without prejudice. (Dkt. 23.) On April 15, 2015, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt. 24.) On May 13, 2015, Defendant filed this Motion. (Dkt. 29.)

Plaintiff alleges that Defendant's negligence caused the death of her husband ("Mr. Casorio"), and she brings this action both in her individual capacity and as a representative of Mr. Casorio's estate. (FAC at ¶ 3.) On or about November 23, 2013, the Casorios left Florida on a cruise aboard Defendant's ship the *Crown Princess*. (*Id.* at ¶ 7.) On November 26, 2013, the ship visited the island of St. Maarten in the Eastern Caribbean. (*Id.* at ¶ 10.) While touring the island, at roughly 1:30 P.M., Mr. Casorio tripped and fell, striking his head against a wall. (*Id.*) A call was made to the medical center aboard the ship. (*Id.*) Mr. Casorio went to the ship and was evaluated by its doctor and medical personnel at 1:55 P.M. (*Id.*) The Casorios were advised that they should leave the ship and go to a local hospital on the island where a CT scan could be performed. (*Id.* at ¶ 12.) Because the Casorios "were scared and felt that if they disembarked they would be abandoned in St. Maarten, a foreign island, without any assistance," they wished to remain on board instead. (*Id.* at ¶ 14.) After signing an "Against Medical Advice form," the Casorios were allowed to remain on the ship. (*Id.*)

By 5:50 P.M., however, Mr. Casorio's condition had worsened. (*Id.* at ¶ 15.) Defendant's employees arranged for an ambulance to take him to the local hospital. (*Id.*) Around 7:25 P.M., a CT scan performed at the hospital showed that Mr. Casorio had a large subdural hematoma. (*Id.* at ¶ 16.) Because treatment would require neurosurgery and the island's hospital was not equipped with proper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8916-GHK (AJWx) | Date | July 30, 2015 |
|---|---|---|---|
| Title | *Mary Ann Casorio v. Princess Cruise Lines, Ltd.* | | |

facilities for such an operation, Mr. Casorio needed to be evacuated by air to another facility. (*Id.*) An air ambulance did not arrive until the following morning around 8:25 A.M. (*Id.*) Mr. Casorio was flown to a Florida hospital, but by the time he was admitted, his "condition was too far gone and physical examination was consistent with brain death." (*Id.*) Care was withdrawn on November 28, 2013, and he passed away. (*Id.*)

Plaintiff alleges, upon information and belief, that Defendant's employees knew or should have known that Mr. Casorio likely had "a high probability of a subdural hematoma with intracranial bleeding which would require neurosurgical treatment" and that the island's local hospital was not equipped to administer such treatment. (*Id.* at ¶¶ 12-13.) Plaintiff contends that Defendant and Defendant's employees (all unnamed Does) were (1) "negligent and careless in leaving [the Casorios] in a location which lacked the ability to provide necessary care and treatment and [(2)] in their failure to either provide Plaintiff and/or [Mr. Casorio] with information so they could arrange for medical air transportation, or alternatively to arrange for medical air transportation, or at least have medical air transportation on standby." (*Id.* at ¶ 17.) Plaintiff asserts five claims: (1) a Death On the High Seas Act ("DOHSA") claim; (2) a "personal injuries" claim; (3) an infliction of emotional distress claim; (4) wrongful death claim; and (5) a survival action claim. (*Id.* at ¶¶ 21-55.)

## II. Legal Standard

In order to survive a motion to dismiss, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a motion to dismiss, we must accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). We need not accept as true, however, legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## III. Analysis

### A. Wrongful Death & Survival Claims

In the Motion to Dismiss the original Complaint, Defendant claimed that Plaintiff cannot assert state law wrongful death and survival claims because maritime law, and specifically DOHSA, provides the exclusive remedy for Plaintiff. We held that Plaintiff might, hypothetically, be able to make out a claim under state law, but not under the facts pled:

> Plaintiff may assert a non-admiralty claim if Mr. Casorio suffered injury both on land and at sea from Defendant's negligence, but the scope of the non-admiralty claim is limited to only the part of the [Defendant's] negligence whose impact occurred on land. Thus, in

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8916-GHK (AJWx) | Date | July 30, 2015 |
|---|---|---|---|
| Title | *Mary Ann Casorio v. Princess Cruise Lines, Ltd.* | | |

> order to state viable California law claims, Plaintiff must plausibly allege that Defendant breached a duty of care owed to Mr. Casorio during the period after he left the ship and up until he was evacuated from the island. . . .
>
> Limited to this narrow time frame, Plaintiff's state law claims are not plausible. Defendant did not have a duty to help Mr. Casorio after he left the ship and was no longer under the medical staff's care. Plaintiff claims Defendant did because Defendant is a carrier. But a carrier's duty to care for injured passengers is limited to giving "first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Restatement (Second) of Torts § 314A(1)(b) (1965) (emphasis added); *see also McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1017 (1997) ("[A carrier's] heightened degree of care is owed only while passengers are in transitu, and until they have safely departed the carrier's vehicle."). Once Defendant arranged for Mr. Casorio to be transported to the local hospital—i.e., to be cared for by others—it no longer owed him a duty of care as a carrier. Moreover, the Complaint does not allege facts that would plausibly suggest that Defendant's conduct or lack thereof during this time period caused Mr. Casorio's death. The Complaint does not contain any factual allegations suggesting that Defendant would have been able to arrange for a medical evacuation any faster than the island's local hospital during that particular time frame.

(Order of Mar. 16, 2015 at 4.)

Plaintiff's FAC does not allege any new facts about what Defendant's employees did or what happened to Mr. Casorio. Instead, Plaintiff has responded to the above analysis by drawing out its carrier-based theory in greater detail. Specifically, Plaintiff argues that Defendant's common carrier duty continued to exist while the Casorios were on land up until the point when Mr. Casorio could "receive appropriate care by others." (Opp'n at 7.) This argument is based in large part on a line of cases under California law stating that "[t]he duty of due care does not necessarily end when the passenger alights safely from the carrier's vehicle; it ends only when the passenger is discharged into a relatively safe space . . . ." *Ingham v. Luxor Cab Co.*, 93 Cal. App. 4th 1045, 1051 (2001) (internal quotation marks and citation omitted). According to Plaintiff, this duty was breached "when Defendant forced Plaintiff and Decedent to disembark the vessel and abandoned them on St. Maarten, an island Defendant knew did not possess the necessary medical facilities, equipment or personnel to provide neurosurgical treatment that Decedent required given his injury." (Opp'n at 8.)

Plaintiff's argument fails because the cited cases concerning wrongful discharge of a passenger are inapposite. Those cases involve (1) carriers forcing a passenger to disembark at a place other than their intended destination and (2) the passenger suffering an injury afterwards. *See Ingham*, 93 Cal. App. 4th at 1051 ("[A] common carrier that ejects a passenger at a place other than the designated destination and in doing so subjects the passenger to reasonably foreseeable injury, violates a common carrier's affirmative duty to prevent harm to its passengers."); *Marlow v. S. Pac. Co.,* 151 Cal. 383, 384 (1907) (passenger who was forced off a train before her ultimate destination because the conductor did

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8916-GHK (AJWx) | Date | July 30, 2015 |
|---|---|---|---|
| Title | *Mary Ann Casorio v. Princess Cruise Lines, Ltd.* | | |

not believe she was the person identified in the ticket could assert claim); *Sloane v. S. Cal. Ry. Co.*, 111 Cal. 668, 676 (1896) (passenger who was forced off a train before her ultimate destination because of a conductor' mistake could assert a claim); *Gorman v. S. Pac. Co.*, 97 Cal. 1, 5-6 (1892) (same); *cf. McGettigan v. Bay Area Rapid Transit Dist.,* 57 Cal. App. 4th 1011, 1019 (1997) (passenger who was forced to exit a train because it had reached the end of the line could not assert a claim for an injury he suffered while in the train terminal).

These cases are not comparable to the facts alleged by Plaintiff. For example, in *Ingham*, an elderly woman took a cab across town. *Id.* at 1048. The driver wanted to drop her off two blocks from her destination at the bottom of a steep hill because he was in a hurry. *Id.* She begged the driver to take her the remaining two blocks, explaining that she needed a cane to walk and that she did not think she would make it up the hill, but he refused. *Id.* She got out and, walking to her destination, fell and broke her hip. *Id.* The California Court of Appeal concluded that the driver breached a duty of care as a carrier. *Id.* at 1048-49. In contrast to the taxi driver in *Ingham*, Defendant's employees did not insist that the Casorios leave the ship nor did they refuse to allow the Casorios to travel to their ultimate destination. Defendant's employees advised them to go to the local hospital but allowed them to stay aboard the ship against this advice. Only after Mr. Casorio's condition worsened did the Casorios take the employees' advice to leave the ship and go to the hospital.

Despite Plaintiff's efforts to fit her case to the facts of cases like *Ingham*, she is not asserting a wrongful ejection claim. Rather, she is alleging that Defendant was careless for failing to arrange for transportation to a better hospital. This would be similar to saying that, if the plaintiff in *Ingham* had a heart attack during her taxi ride, the driver would have had a duty, not just to take her to the nearest hospital for treatment, but to take her to a hospital that has the specific type of facilities that she would have needed to receive effective treatment. Carriers cannot be reasonably expected to have that level of knowledge about local medical facilities nor can they be expected to provide transportation to whatever medical facility is best for the passenger, no matter how far away the facility is. This is particularly true when the carrier is a cruise ship that travels to a different country or island every other day and carries hundreds, if not thousands, of passengers who could suffer any variety of serious ailments at any given time. The duty that Plaintiff is suggesting Defendant breached does not exist under California law.

Accordingly, Plaintiff's wrongful death and survival claims under California law are hereby **DISMISSED**.

      B.    **DOHSA**

Plaintiff's theory of liability under maritime law is not meaningfully different from her theory of liability under state law. Plaintiff alleges that Defendant had a "duty from the moment it learned of Decadent's [sic] injuries to provide care and first aid" and that it breached that duty by "knowingly hand[ing] Decedent over to others incapable of caring for him." (Opp'n at 17.)

The only case Plaintiff cites to support her DOHSA claim, *Franza v. Royal Caribbean Cruises*, Ltd., 772 F.3d 1225 (11th Cir. 2014), is inapposite. In *Franza*, a cruise passenger fell and hurt himself

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8916-GHK (AJWx) | Date | July 30, 2015 |
|---|---|---|---|
| Title | *Mary Ann Casorio v. Princess Cruise Lines, Ltd.* | | |

while he was disembarked, and the cruise ship allegedly "required" him to be treated aboard the ship, rather than go to the local hospital. *Id.* at 1228-29. On board, after the ship's medical staff made a series of mistakes that caused significant delays in the passenger's treatment, they sent him to a local hospital, which then evacuated him by air. *Id.* at 1229. It was too late, and he passed away. *Id.* His daughter sued on behalf of his estate, claiming that the cruise ship was responsible for the staff's negligence. *Id.* at 1230. The Eleventh Circuit held that she had stated a plausible claim. *Id.* at 1254.

Unlike *Franza*, Plaintiff does not allege that the doctors or staff aboard Defendant's ship caused any delay in Mr. Casorio's treatment or that they made any mistakes in their diagnosis. The sole mistake that Plaintiff alleges is the failure to secure transportation to the right type of medical facility. The *Franza* court did not suggest that ships have that kind of responsibility for their passengers' well-being. In fact, the Eleventh Circuit expressly conceded that there are limits to what a cruise line can do for an injured passenger. *See id.* at 1253 ("It is indisputable that cruise lines must treat their passengers with ordinary reasonable care under the circumstances. Implicit in this variable standard is the notion that cruise lines will not always be held to the same standard of care that would guide treatment onshore.") (internal quotation marks and citations omitted).

By contrast, and as we noted in our Order, there is direct authority for the proposition that a ship does *not* have a duty to secure medical transportation. In *Gliniecki v. Carnival Corporation*, a man suffered a stroke while aboard the defendant's cruise ship. 632 F. Supp. 2d 1205, 1206 (S.D. Fla. 2009). The ship sent him ashore to a Panamanian hospital, but the facility was not equipped to treat stroke victims. *Id.* The man was transferred to a different facility and eventually treated, but according to the complaint, the delay in treatment caused him to become permanently disabled. *Id.* The man committed suicide and his wife filed a suit against the ship. *Id.* The plaintiff's theory was that the defendant had a "duty to timely transport [the plaintiff] to suitable Panamanian medical facilities aboard an adequately equipped ambulance." *Id.* at 1205. The district court dismissed the complaint with prejudice, rejecting the theory completely:

> Taken to their logical conclusion, Plaintiff proposes duties far beyond preventing accidents as passengers travel across the ship's gangplank. In this case, Carnival would, at a minimum, have to procure Panamanian ambulance services, certify that their life support equipment was sufficient to treat stroke victims, and ensure that Conrad traveled seventy kilometers from port to Clinica Einstein in sufficient time to prevent the worst consequences of his stroke. In every other case thereafter, Carnival would have to be similarly sensitive to the particularities of the passenger's illness to discharge the duties Plaintiff submits.

> To vest Carnival, and ship owners like it, with the duty to provide medical transportation services in foreign ports of call each time a passenger falls ill would turn cruise lines into insurers of passenger health, a proposition which runs contrary to the dictates of *Barbetta*. "A shipping company is not in the business of providing medical services to passengers." *Barbetta*, 848 F.2d at 1374 (citation omitted). "[I]t does not possess the expertise requisite to supervise" medical transportation officers or inspect medical

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8916-GHK (AJWx) | Date | July 30, 2015 |
|---|---|---|---|
| Title | *Mary Ann Casorio v. Princess Cruise Lines, Ltd.* | | |

> transportation equipment. *Id.* . . . Because Carnival has no duty to provide medical
> transportation policies or services, Plaintiff cannot state a claim upon which this Court
> can grant relief, and thus leave to amend would be futile. Therefore, the Court must grant
> Carnival's motion to dismiss with prejudice.

*Id.* at 1207-08. *Gliniecki* may go too far by suggesting that a cruise line has "no duty to provide medical transportation policies or services" ever. But under the facts alleged in *Gliniecki* and those alleged in this case, there was at least no duty for the cruise line to do more than it did. As discussed above, even under California law, a carrier does not have a duty to provide transportation to a particular type of hospital. There is no reason to believe maritime law provides for such a duty either.

Accordingly, Plaintiff's DOHSA claim is hereby **DISMISSED**.

### C. Personal Injuries and Emotional Distress Claims

In our last Order, we gave Plaintiff leave to amend the Complaint to assert a new "emotional distress" claim. Plaintiff has now asserted new claims for both "Personal Injuries" and "infliction of emotional distress." The personal injuries claim appears to be either a negligence or a negligent infliction of emotional distress claim. (*See* FAC at ¶ 30 ("As a direct and proximate result of the negligence and carelessness of Defendant[] . . . Plaintiff . . . was hurt and injured in her health, strength and activity, in all parts of her body, and sustained shock and injury to her nervous system and person, all of which injuries have caused and continue to cause plaintiff great mental, physical and nervous anxiety, and pain and suffering.").) By contrast, the infliction of emotional distress claim is, according to the Opposition, an intentional infliction of emotional distress claim. (*See* Opp'n at 19 ("With respect to Count III, Plaintiff can state a claim for intentional infliction of emotional distress.").)

As to the negligence or negligent infliction of emotional distress claim, it fails for the same reason as the DOHSA and wrongful death/survival claims. If Defendant owed no duty of care to Mr. Casorio to provide better medical transportation, it did not owe Plaintiff a duty to avoid causing her harm for failing to provide such transportation.

As to the intentional infliction of emotional distress claim, Plaintiff has not pled facts that would support such a claim. "A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks and citations omitted). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks and citations omitted). Defendant's alleged behavior does not rise to this level. Defendant may have upset Plaintiff by sending her husband to the island's hospital, instead of calling for an air evacuation, but it was not extreme or outrageous to do that. The staff aboard the ship tried to be helpful, urging the Casorios to leave the ship and seek medical attention many hours before they agreed to do so. The fact that they may have been

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8916-GHK (AJWx) | Date | July 30, 2015 |
|---|---|---|---|
| Title | *Mary Ann Casorio v. Princess Cruise Lines, Ltd.* | | |

able to do something more to save Mr. Casorio does not make Defendant liable for intentionally inflicting emotional distress on Plaintiff.

Accordingly, Plaintiff's personal injuries and infliction of emotional distress claims are hereby **DISMISSED**.

### IV.   Conclusion

In light of the foregoing, Defendant's Motion is **GRANTED**. We gave Plaintiff an opportunity to amend her complaint and allege new facts and claims. As Plaintiff made no meaningful changes to the factual allegations and her new claims are no more viable than the previously asserted claims, we find that further amendment would be futile. Accordingly, Defendant's claims are **DISMISSED with prejudice and without leave to amend**.

**IT IS SO ORDERED.**

|  | – | : | -- |
|---|---|---|---|
|  | Initials of Deputy Clerk | | Bea |